IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID SHAVER,

Plaintiff, No. CIV S- 05-0150 FCD GGH P

vs.

D. L. RUNNELS, et al.,

Defendants. FINDINGS AND RECOMMENDATIONS

_______________________________/

Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court is defendant Nauman's[1] re-noticed motion for summary judgment to which plaintiff has filed his opposition.[2]

---

[1] Although the motion was also brought on behalf of defendant Runnels, he was dismissed from this action by Order, filed on September 12, 2006, adopting the Findings and Recommendations, filed on August 16, 2006.

[2] The court's review having determined that in this case transferred first from the Central District and then from the Fresno Division of the Eastern District, plaintiff had not been provided the requisite notice, defendant Nauman's dispositive motion, originally filed on August 14, 2006, was denied without prejudice to re-notice following plaintiff's having been provided with proper notice of the requirements for opposing defendant's motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure pursuant to Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988). Plaintiff was afforded the opportunity to file a supplemental opposition. See, Order, filed on February 20, 2007. Actually, this court's review reveals that the undersigned had previously provided the requisite notice on November 28, 2006. See, Order & Findings and

At this point, as noted, plaintiff is proceeding only against one defendant, Dr. Nauman (defendant Runnels and plaintiff's claims for injunctive relief having been dismissed), on a claim for money damages for a violation of his rights under the Eighth Amendment. See Findings and Recommendations, filed on August 16, 2006, adopted by Order, filed on September 12, 2006.

> Defendant Nauman, a psychiatrist, diagnosed plaintiff, on January 17, 2003, as suffering from a mental disorder with symptoms of schizophrenia and manic-depression. First Amended Complaint (FAC), p. 5. As a result of her diagnosis and in light of a prior psychiatric diagnosis indicating that plaintiff has an antisocial personality disorder, among other mental conditions, defendant Nauman recommended plaintiff's placement on single cell status. Id. Notwithstanding, two committees, the Folsom State Prison Unit One Classification Committee (UCC), on May 6, 2003, and an Inter-disciplinary Treatment Team Committee (ITTC), on December 19, 2003, both denied defendant Nauman's recommendation that plaintiff be placed on single cell status. Id. Plaintiff asserts that his Eighth Amendment right to adequate medical care and treatment was thereby violated and that he has been subjected to cruel and unusual punishment. FAC, p.5 and attachment. Plaintiff alleges that defendant Nauman was present at the two committee meetings and failed to object to the committees' decisions denying plaintiff adequate medical care. Id.

Findings and Recommendations, filed on 8/16/06, p. 2, adopted by Order, filed on 9/12/06; see also, Order, filed on 11/28/06, p. 2.

Motion for Summary Judgment

Defendant moves for summary judgment, under Fed. R. Civ. P. 56, as a matter of law on the ground that the undisputed facts demonstrate that plaintiff's dispute is based on his disagreement with defendant's treatment recommendations and defendant found that single cell status for plaintiff did not rise to the level of a medical necessity. Notice of Motion for Summary Judgment (NMSJ), p. 1; Memorandum of Points and Authorities in Support of MSJ (MMSJ), p. 1. Defendant also contends that she is entitled to qualified immunity. MSJ, pp. 7-8.

---

Recommendations, filed on Nov. 28, 2006.

*Legal Standard for Summary Judgment*

Summary judgment is appropriate when it is demonstrated that the standard set forth in Fed. R. Civ. P. 56(c) is met. "The judgment sought shall be rendered forthwith if . . . there is no genuine issue as to any material fact, and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct., 2548, 2553 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its

contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255, 106 S. Ct. at 2513.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587, 106 S.Ct.

1356 (citation omitted).

On November 28, 2006, and again, on February 20, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

*Undisputed Facts*

In his opposition ((Opp.) at p. 2, n.1),[3] plaintiff expressly concedes that the following of defendant's undisputed facts are, indeed, undisputed: 1. On January 17, 2003, May 6, 2003, and December 19, 2003, plaintiff was incarcerated at Folsom State Prison.[4] 2. Defendant Runnels was the Acting Warden of Folsom State Prison from January 2004 to May 2004. 3. Plaintiff is currently incarcerated at the R.J. Donovan Correctional Facility in San Diego, California (RJD). As to this fact to which plaintiff concedes, although the record indicates he had been incarcerated at RJD as of 11/07/05, docket entry # 14, notice of change of address), on December 10, 2007, at docket entry No. 62, plaintiff has subsequently filed another notice of change of address, this time to California Medical Facility at Vacaville. 5. Defendant Dr. Nauman treated Plaintiff's psychological condition at Pleasant Valley Prison and Folsom State Prison for two years before January 2003. Defendant saw plaintiff approximately 10 to 15 times during the two-year period. 7. On January 17, 2003, defendant interviewed Plaintiff at

---

[3] Plaintiff was given additional opportunities to file opposition to the motion after the court provided Rand and Klingele notice. Plaintiff's first opposition filing occurred on 9/15/06, with largely duplicative filings following, on 12/11/06, and on 3/8/07. If opposition material cited differs or is enhanced by a later filing, the court will identify the date of the filing; otherwise, the opposition cited references plaintiff's filing on 9/15/06.

[4] Although defendant references the second amended complaint in support of this DUF, this matter proceeds on the first amended complaint, as modified by Orders, filed on 9/28/05 (directing defendants Nauman and Runnels to answer), and on 9/12/06 (dismissing defendant Runnels as a defendant). The second amended complaint was stricken prior to the transfer of this case. See Docket Entry # 1, Transfer Documents, Part 1, pp. 5, 10. Nevertheless, as the gravamen of the claim against the sole remaining defendant is the same in both incarnations of plaintiff's complaint, the court may proceed to adjudicate this matter.

Folsom State Prison about his mental health situation. 14. Plaintiff admits that he interpreted defendant's January 17, 2003, notes as recommending that he be placed in a single cell. 15. Defendant Nauman did not support plaintiff's desire to be placed in a single cell at the May 6, 2003, Classification Committee hearing. 16. Defendant did not support Plaintiff's desire to be placed in a single cell at the December 19, 2003, Interdisciplinary Treatment Team Committee hearing. 17. The Classification Committee and the Inter-Disciplinary Treatment Team Committee, not Defendant Nauman, had the authority to make the final decision on housing placement.

*Disputed Facts*

Plaintiff seeks to dispute the following of defendant's "undisputed" facts: 4. Plaintiff is currently housed at RJD in a cell with no cellmate, citing MSJ, Exhibit A, plaintiff's dep., 10: 10-14. Plaintiff takes issue with this on the basis that while he has asserted that he had no cellmate at RJD, he was assigned a double cell there and could have a cellmate assigned at any time. Plaintiff's Lodged Deposition (Ldg. Dep.)[5]: 10:18-19; 11:3-9; 25:9-12, 46:1-3. However, this point is irrelevant at this time because, as the court notes, plaintiff is incarcerated elsewhere, and no representation has been made as to his current cell status. 6. Defendant knew plaintiff's mental condition well and they had a good doctor/patient relationship, citing MSJ, Exhibit A: 26: 10-12, 23-24. Plaintiff provides, as a basis for disputing this putatively undisputed fact, defendant's own Exhibits B and C. Defendant's Exhibit B appears to be a copy of defendant's interdisciplinary progress notes for her interview with plaintiff on January 17, 2003[6]; Exhibit C is defendant's declaration, initially submitted as part of the defendants'

---

[5] MSJ Exhibit A is a reference to the portion of plaintiff's deposition transcript submitted and referenced by defendant in support of the motion for summary judgment. When the court references pages and lines in the "Ldg. Dep.," that is a reference to plaintiff's deposition lodged by defendant in its entirety.

[6] Although the notes appear to be signed by defendant and defendant references them in her declaration which follows, there does not appear to be any formal authentication of the progress notes by a records custodian submitted. Because, however, plaintiff does not dispute

response to plaintiff's motion for preliminary injunction. See discussion below. 8. Plaintiff admits that defendant Dr. Nauman's report of the January 17, 2003, session accurately reflects the topics discussed between them. MSJ, Exhibit A: 28:10-25, 29: 1-7. Plaintiff, in dispute, cites pages 28-29 of his deposition; however, plaintiff therein largely affirms that defendant Nauman's January 17, 2003, progress notes accurately reflects the interview/discussion plaintiff and she had at that time. Plaintiff also makes a vague reference to the complete copy of the deposition, evidently in an effort to have the court find facts therein to dispute this claim by defendant. It is inappropriate for plaintiff to attempt to place the burden upon the court to find testimony that shores up his own claim. Bias v. Moynihan, __F.3d __, 2007 WL 4198211 *3 (9th Cir. 2007) ("[a] district court does not have a duty to search for evidence that would create a factual dispute...." [and] "lacks the power to act as a party's lawyer, even for pro se litigants.")

Nevertheless, the court's review of the deposition indicates that plaintiff states in his deposition that he believed he needed a single cell to deal with "the stress I was under and the situation of my mental health at that time." Pltf's. Ldgd. Dep. 30:1-3. He also confirms that her notes indicated that defendant suggested that a single cell might be helpful and that plaintiff had been hearing voices. Id.: 30:11-17. Plaintiff also claims to have heard voices off and on since 1984, which apparently coincide with the level of stress he is feeling. Id.: 30:19 - 32:6. 9. Defendant reported on January 17, 2003, that plaintiff wanted to be in a single cell to deal with the adjustment to his life sentence. MSJ, Exhibit A: 29:15-19. Plaintiff does not specifically dispute this portion of fact no. 9. However, plaintiff attempts to take issue with the following: plaintiff felt isolated and removed from his family as well as frustrated with prison life. Plaintiff indicated that he found it difficult to get along with people and living in a double cell was difficult for him. Defendant asked plaintiff about the symptoms he experienced by being in a double cell. Plaintiff said that he heard voices. When defendant inquired further about the

---

the authenticity of the notes (see pltf's. Ldg. Dep., 28:10-29:7) , the court will not disregard them.

voices, plaintiff's response was vague and he talked about his family and the unfairness of his prison sentence. Given the vagueness of plaintiff's description of his symptoms and auditory hallucinations, coupled with his need for secondary gain, in the form of a single cell, defendant Dr. Nauman reported that she did not believe his representations were true. MSJ, Exhibit C, Declaration of Dr. Nauman in support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction; Exhibit B, Chronological Interdisciplinary Progress Notes dated January 17, 2003. Ironically, as support for his dispute as to the truth of these assertions, plaintiff appears to rely on both of these exhibits, as well as his own deposition. See discussion below. 10. Based on defendant Dr. Nauman's experience as a licensed clinical psychologist, review of plaintiff's case history, and her interview with him, she found that plaintiff did not represent a danger to himself or others. Plaintiff expressed no suicidal ideation or intention to harm other inmates or correctional staff. When defendant interviewed plaintiff on January 17, 2003, he was not a threat to the security and safety of the institution. MSJ Exhibit C, Declaration of Dr. Nauman in support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction; Exhibit B, Chronological Interdisciplinary Progress Notes dated January 17, 2003. Plaintiff in seeking to dispute these representations cites the same exhibits and his own deposition. Again, see discussion below. 11. Defendant suggested that single cell status for Plaintiff "might be helpful," but was not medically necessary for his treatment. Defendant concluded that Plaintiff's condition would not worsen if he continued to live in a double cell. Exhibit C, Declaration of Dr. Nauman in support of Defendants' Response to Plaintiff's Motion for Preliminary Injunction; Exhibit B, Chronological Interdisciplinary Progress Notes dated January 17, 2003. 12. Plaintiff admits the only medical documentation he has relating to his need to be in a single cell is the January 17, 2003, report authored by defendant. MSJ, Exhibit A: 33: 14-18; 34: 1-7, 21-25. 13. Plaintiff admits that he has no medical opinion or records supporting his view that being in a single cell was medically necessary for his treatment. MSJ, Exhibit A, 33: 6-21; p. 34: 1-34. As to Fact Nos. 11 through 13, plaintiff again cites defendant's Exhibits A, B, C and his

complete deposition (without page/line citations).  See discussion below.

*Legal Standard for Eighth Amendment Claim*

In order to state a § 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976).  To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324 (1991); McKinney v. Anderson, 959 F.2d 853 (9th Cir. 1992) (on remand).  The requisite state of mind for a medical claim is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 4, 112 S. Ct. 995, 998 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Indications that a prisoner has a serious need for medical treatment are the following:  the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.  See, e.g., Wood v. Housewright, 900 F. 2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989).  McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970 (1994) the Supreme Court defined a very strict standard which a plaintiff must meet in order to establish "deliberate indifference."  Of course, negligence is insufficient.  Farmer, 511 U.S. at 835, 114 S. Ct. at 1978. However, even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient.  Id. at 836-37, 114 S. Ct. at 1979. Neither is it sufficient that a reasonable person would have known of the risk or that a defendant should have known of the risk.  Id. at 842, 114 S. Ct. at 1981.

It is nothing less than recklessness in the criminal sense – subjective standard – disregard of a risk of harm of which the actor is actually aware. Id. at 838-842, 114 S. Ct. at 1979-1981. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837, 114 S. Ct. at 1979. Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." Id. at 847, 114 S. Ct. at 1984. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at 842, 114 S. Ct. at 1981. If the risk was obvious, the trier of fact may infer that a defendant knew of the risk. Id. at 840-42, 114 S. Ct. at 1981. However, obviousness per se will not impart knowledge as a matter of law.

Also significant to the analysis is the well established principle that mere differences of opinion concerning the appropriate treatment cannot be the basis of an Eighth Amendment violation. Jackson v. McIntosh, 90 F.3d 330 (9th Cir. 1996); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

Moreover, a physician need not fail to treat an inmate altogether in order to violate that inmate's Eighth Amendment rights. Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989). A failure to competently treat a serious medical condition, even if some treatment is prescribed, may constitute deliberate indifference in a particular case. Id.

Additionally, mere delay in medical treatment without more is insufficient to state a claim of deliberate medical indifference. Shapley v. Nevada Bd. of State Prison Com'rs, 766 F.2d 404, 408 (9th Cir. 1985). Although the delay in medical treatment must be harmful, there is no requirement that the delay cause "substantial" harm. McGuckin, 974 F.2d at 1060, citing Wood v. Housewright, 900 F.2d 1332, 1339-1340 (9th Cir. 1990) and Hudson, 112 S. Ct. at 998-1000. A finding that an inmate was seriously harmed by the defendant's action or inaction tends to provide additional support for a claim of deliberate indifference; however, it does not end the inquiry. McGuckin, 974 F.2d 1050, 1060 (9th Cir. 1992). In summary, "the more serious the

medical needs of the prisoner, and the more unwarranted the defendant's actions in light of those needs, the more likely it is that a plaintiff has established deliberate indifference on the part of the defendant." McGuckin, 974 F.2d at 1061.

Superimposed on these Eighth Amendment standards is the fact that in cases involving complex medical issues where plaintiff contests the type of treatment he received, expert opinion will almost always be necessary to establish the necessary level of deliberate indifference. Hutchinson v. United States, 838 F.2d 390 (9th Cir. 1988). Thus, although there may be subsidiary issues of fact in dispute, unless plaintiff can provide expert evidence that the treatment he received equated with deliberate indifference thereby creating a material issue of fact, summary judgment should be entered for defendants. The dispositive question on this summary judgment motion is ultimately not what was the most appropriate course of treatment for plaintiff, but whether the failure to timely give a certain type of treatment was, in essence, criminally reckless.

*Discussion*

Defendant contends that plaintiff's claim of inadequate medical care amounts to nothing more than a difference of opinion between plaintiff and defendant as to whether single cell status for plaintiff was medically necessary. Plaintiff seeks to frame the claim, however, as one wherein defendant had found single cell status medically necessary but later abdicated this putative medical finding before classification committee hearing and an interdisciplinary treatment team committee hearing in violation of plaintiff's Eighth Amendment rights. Plaintiff has conceded that these committees make the final determination on housing placement.

The problem for plaintiff is that he does not present adequate evidence to overcome that submitted by defendant in support of defendant's contention that she did not find single cell status for plaintiff was medically necessary. In his deposition, he makes vague references to evidence that might be in his file supporting his position, but he does not produce it. In the appeal responses included as Exhibit D to the MMSJ (p. 12), prison officials explicitly

state that "[t]here are also NO medical chronos in the form of a 128-C from a physician, psychiatrist or other type of clinical staff that indicates your need for single-cell housing." Moreover, the official's review of plaintiff's central file was:

> void of any type of documentation or disciplinary history that indicates that you possess any type of in-cell sexual abuse, assaultive behavior toward a cell partner, or in-cell violence with a cell partner or predatory behavior toward a cell partner.

MMSJ, Exhibit D, p. 12; see also, pp. 13, 18-19.

In defendant Nauman's declaration, submitted as Exhibit C (first submitted in opposition to plaintiff's motion for preliminary injunction, found moot and denied by <u>Order</u>, filed on 9/12/06), she states that in her interview with plaintiff on January 17, 2003, she "reported that he felt isolated and removed from his family as well as frustrated with prison life." MSJ, Exhibit C, ¶ 3. She further states that plaintiff:

> indicated that his main complaint is that he finds it difficult to get along with people and that he found being in a double cell was difficult. I asked Mr. Shaver what symptoms he experiences or were caused by [] being in a double cell. Mr. Shaver responded that he heard voices. I inquired further about the voices. Mr. Shaver responded that he heard voices. I inquired further about the voices. Mr. Shaver's response was vague and he began talking about his family and the unfairness of his prison sentence. Given the vagueness of Mr. Shaver's description of his symptoms and auditory hallucinations coupled with his need for secondary gain, in the form of a single cell, I was not necessarily convinced that his representations rang true.

Id., ¶ 4.

Defendant Nauman also declared that plaintiff expressed a desire to be housed "in a single cell to deal with the adjustment to his life sentence." Id., ¶ 5. She further states that a she "suggested that a single cell 'might' be helpful for psychiatric reasons...." Id., ¶ 6. She, however, asserts that she did not actually "conclude that it would be helpful nor did I recommend that a single cell was necessary for Mr. Shaver's treatment. I did not come to the conclusion that Mr. Shaver being housed in a double cell would lead to significant decompensation." Id.

She states:

> Based on my experience as a licensed clinical psychologist, review of Mr. Shaver's case history, and my interview with him, I determined that he did not represent a danger to himself or others. He expressed no suicidal ideation or intention to harm other inmates or correctional staff. Moreover, when I interviewed Mr. Shaver on January 17, 2003, he did not represent a threat to the security and safety of the institution.

Id., ¶ 8.

Somewhat confusingly, defendant specifically references her presence at a January 19, 2003, Unit Classification Committee meeting as the mental health representative (id., ¶ 9), but does not refer to the committee dates plaintiff puts at issue: the Folsom State Prison Unit One Classification Committee (UCC), on May 6, 2003, and an Inter-disciplinary Treatment Team Committee (ITTC), on December 19, 2003. She does state, however, that while she is currently at Napa State Hospital, at the time of plaintiff's allegations, the period from January 17, 2003 through December of 2003, she was employed as a staff psychologist at Folsom State Prison's mental health clinic. Id., ¶ 1.

The court's review of the January 17, 2003, progress notes largely confirms the representations of defendant in her declaration on the relevant points. MSJ, Exhibit B. Defendant Nauman, inter alia, states therein that plaintiff's "chief complaint" was:

> 1) he can't get along with people; 2) he finds it difficult to single cell [sic]. He says it's not his cell mate. He just has a problem with anyone he's living with! When asked what symptoms occur/or are caused by his being double celled he first stated he hears voice [sic]. When asked "Tell me about the voices.["] I/M was vague and began talking about missing his family & feeling isolated in prison as well as frustrated by prison life.

Exhibit B, p. 1.

Defendant's notes indicate that plaintiff is sentenced to a three-strike term of 25 to life, having been arrested in June of 1997[7] (and evidently convicted and sentenced for "petty theft

---

[7] In his deposition plaintiff states that he was arrested on April 28 (not referencing the year), but that he first went to court on June 9, 1997, and has been incarcerated since that time.

with prior"). Id. At the time of the interview, plaintiff had evidently served five and a half years. Id.

Defendant's notes further set forth:

> What's keeping him going in prison & in life now is his appeal - - he feels like the crime doesn't fit the punishment/ He wants a single cell to deal with his adjustment to his life sentence!

Id.

Defendant further diagnosed plaintiff as having a "depressed mood, flat affect." Id. She also sets forth the following: "consider inmates [sic] needs for secondary gains as description of other symptoms did not ring true." Id., p. 2.

Her final notes, in relevant part, are as follows:

> A) I/M depressed; Axis I
> Schizoaffective: P/D Axis II
> GAF: 60   I/M wants single cell.  Single cell for 1- 6 months may be helpful to inmate/
> [B]) Discussed this interview with Dr. Weyl, assigned case manager / He said he'd look into intake matter & I/M's desire for single cell - - To Dr. Weyl that I/M was asked to speak to CCI & CCII regarding single cell.  I suggested that a single cell might be indicated for psychiatric reason which could be discussed with Dr. Cho, SS psychologist

Id.

Plaintiff does not essentially dispute the substance of defendant's notes as reflecting what was discussed at the interview. Although plaintiff evidently came away with the belief that defendant had determined that it was a medical necessity that plaintiff be placed in a single cell, the notes themselves do not demonstrate that defendant ever recommended single cell placement as a medical necessity, but rather that she found that a psychiatric basis might be found for such status. The emphasis appears to be on plaintiff's desire for single cell status based on his difficulty adjusting to the length of his prison term, and the defendant evidently questioned

---

Pltf's. Ldgd. Dep.: 12: 24 - 13:1.

the authenticity of the symptoms plaintiff claimed based at least in part on the alleged vagueness of his description concerning hearing voices.

In his deposition, plaintiff asserts that at RJD he has been in the Enhanced Outpatient program for mental health and has been undergoing both group and individual therapy. Pltfs. Ldg. Dep.: 18:9 - 20:21. He also indicated that he had been taking various medications for his psychological condition, including Seroquel to deal with hearing voices, Prozac for depression and Benadryl to help him sleep, although he stated that he had been without Seroquel at the time for a month and a half. Id., 21:24 - 23:2. He also indicated that he suffered from high blood pressure/hypertension, a kidney condition and what he believed were stress headaches. Id.: 24:6-16. The court observes that plaintiff indicates that his problems could not have arisen from being double celled at the time of the deposition, since plaintiff had had no cellmate since being housed at RJD. Id.: 25:9-12. Defendant is correct that plaintiff stated in his deposition that he believed he had a good relationship with defendant, indicating that he had seen her some 10 to 15 times before the January 17, 2003, interview, primarily when he saw her at Pleasant Valley State Prison, that she had been his treating doctor since about January 16, 2001, and that she knew his psychiatric condition very well. Id.: 26:6-24. He also confirmed that he was able to communicate with her very well and that he felt she "really knew" him and was able to understand his psychiatric history. Id.:26:25 - 26:23. Plaintiff also testified that he had reviewed the progress notes more than once that defendant made of the January 17, 2003, interview, which the court has set forth above, and that he believed the notes accurately covered what they discussed and, in particular, his request. Id,: 28:10-29:7. Also, when asked, he confirmed that he did not have any knowledge of a medical opinion from any source indicating that his being single-celled was a medical necessity. Id.: 33:14-18. He confirmed as well that he had not medical chrono for a single cell. Id.: 33:19-21. In fact, plaintiff conceded that other than the notes taken by defendant as to the January 17, 2003, interview, plaintiff had no documentation concerning his being in a single cell. Id.: 8-25. Plaintiff does repeatedly state

that he does not have access to his complete medical records and therefore does not know what doctors or psychiatrists may have written, but that he had discussed his desire for a single cell. Id.: 33:8-13; 34:12-20.  Plaintiff concedes that he bases his testimony that she requested a single cell for him not on what defendant said at the classification hearing on May 6, 2003, but on the January 17, 2003, interview, but asserts that his claim of deliberate indifference arises from defendant's failure to support his desire for a single cell at the classification hearing or at the December 19, 2003, interdisciplinary treatment committee hearing.  Id.: 36:9 - 37:14; 38:21-25; 42:1-24.  It is clear from his testimony that plaintiff believed, based on the January 17, 2003, interview and conversation that they had, that the defendant would recommend that he be placed in a single cell to help him with his stress and his high blood pressure condition.  Id.: 38:21 - 42:24.

There is some evidence in the January 17, 2003, progress notes to support plaintiff's position that defendant intended to recommend single cell status for plaintiff, although defendant does not flatly state it as a medical necessity either for plaintiff's psychiatric condition, over which defendant sets forth some doubt as a basis for single celling plaintiff, or for any physical conditions.  Plaintiff concedes that he relies solely on that interview and conversation for his claim of deliberate indifference to a serious medical need.  The notes indicate that defendant conveyed to plaintiff that single cell status could benefit plaintiff and that she conveyed his concerns to the case manager.  However, she subsequently represents that it was her ultimate expert opinion that being housed in a single cell was not a medical necessity for plaintiff.  It is understandable that plaintiff feels he was misled by the defendant as to what she thought would be beneficial for him and that he felt betrayed when she did not stand behind him and recommend single cell status at the May, 2003 and December, 2003, hearings.  However, this is, at bottom, a case wherein plaintiff simply disagrees with defendant's decision not to recommend single cell status for him, and he produces insufficient expert opinion to demonstrate that by her failure to do so at the hearings at issue, he has been subjected to a violation of his

Eighth Amendment rights. Hutchinson v. United States, supra, 838 F.2d 390. Plaintiff having failed to meet his burden to demonstrate the existence of a dispute as to a material issue of fact, the court must recommend summary judgment for defendant.

Accordingly, IT IS RECOMMENDED that defendant Nauman's motion for summary judgment, re-noticed on March 12, 2007, be granted and judgment entered for defendant.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 01/08/08

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

GGH:009
shav0150.msj